## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

NEWREZ LLC d/b/a SHELLPOINT )
MORTGAGE SERVICING, )
)
        **Plaintiff,** )
)
        **v.** )        **Civil Action No. 2015-0070**
)
DEAN C. PLASKETT and )
THE DEPARTMENT OF JUSTICE OF )
THE UNITED STATES, )
)
        **Defendants.** )
_____ )

**Attorneys:**
**Matthew A. Reinhardt, Esq.,**
St. Thomas, U.S.V.I.
      *For Plaintiff*

**Martial A. Webster, Esq.,**
St. Croix, U.S.V.I.
      *For Defendant Dean C. Plaskett*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
      *For Defendant Department of Justice*

## MEMORANDUM OPINION

**Lewis, District Judge**

      THIS MATTER comes before the Court on Plaintiff Newrez LLC d/b/a Shellpoint

Mortgage Servicing's ("Plaintiff")[1] "Motion for Summary Judgment" ("Motion") (Dkt. No. 41)

against Defendants Dean C. Plaskett ("Plaskett") and the Department of Justice of the United

---

[1] The Motion was originally filed by PHH Mortgage Corporation ("PHH"). Via an Assignment of Mortgage, PHH transferred its interest in the subject Note and Mortgage to Newrez LLC d/b/a Shellpoint Mortgage Servicing. (Dkt. No. 90). For ease of reference, PHH and Newrez LLC will be referred to collectively herein as "Plaintiff."

States ("DOJ").[2] In addition, Plaintiff filed a "Motion to Strike Sur-Reply" (Dkt. No. 47) seeking to strike Plaskett's *pro se* sur-reply to the Motion for Summary Judgment. Plaskett later filed a "Motion to Supplement" (Dkt. No. 69) and Plaintiff filed a "Motion for Status Conference" (Dkt. No. 71).[3] For the reasons discussed below, the Court will deny Plaintiff's Motion to Strike; grant Plaskett's Motion to Supplement; grant Plaintiff's Motion for Summary Judgment; and deny as moot Plaintiff's Motion for Status Conference.[4]

## I.     BACKGROUND

On October 1, 2015, Plaintiff filed a Complaint in the Superior Court of the Virgin Islands against Raymond Plaskett[5], Dean C. Plaskett, the DOJ, and the Marienhoj Hills Homeowners Association, Inc. alleging causes of action for a debt owed and for foreclosure of real property mortgage. (Dkt. No. 1-2). On November 9, 2015, the DOJ removed the case to this Court pursuant to 28 U.S.C. § 1444. (Dkt. No. 1).

---

[2] The Marienhoj Hills Homeowners' Association, Inc. ("Marienhoj") was originally named as a Defendant in the case. It filed an Answer and cross-claims against its co-defendants seeking a monetary judgment against Raymond Plaskett and Dean C. Plaskett and a determination of the priority of its lien on the property in dispute. (Dkt. No. 13). Ultimately, Plaintiff stipulated to the dismissal of its claims against Marienhoj, and Marienhoj and the other Defendants stipulated to the dismissal of Marienhoj's cross-claims. (Dkt. Nos. 40, 60).

[3] On April 11, 2023, Martial A. Webster, Esq. filed a Notice of Appearance on behalf of Plaskett. (Dkt. No. 100). Prior to that time, Plaskett appeared *pro se.*

[4] In the Motion to Strike, Plaintiff requested a status conference in the event that "such a conference [would] assist the Court to rule on Plaintiff's [Motion for Summary Judgment]." (Dkt. No. 71 at 2). Because the Court addresses Plaintiff's Motion for Summary Judgment herein, the Motion for Status Conference will be denied as moot.

[5] Based on the filings in this case, Raymond Plaskett was the father of Dean C. Plaskett. *See* Dkt. Nos. 43-9; 64-1. Raymond Plaskett died on June 3, 2012 and a Suggestion of Death was filed in the case. (Dkt. No. 64). However, no motion was filed to substitute a party for Raymond Plaskett, within 90 days after the Suggestion was filed, and the Court ultimately dismissed Plaintiff's claims against Raymond Plaskett pursuant to Fed. R. Civ. P. 25(a). (Dkt. No. 72).

In the Complaint, Plaintiff alleges that, on or about October 16, 2003, Raymond Plaskett and Defendant Dean C. Plaskett (collectively, the "Borrowers"), executed and delivered a promissory note (the "Note") in favor of Merrill Lynch Credit Corporation ("MLCC"), obligating themselves to repay MLCC the principal amount of $151,698.00, together with interest at a rate of 6.25% per annum, with monthly installments of $934.03. (Dkt. Nos. 1-2 at ¶ 4). As security for payment on the Note, the Borrowers granted to MLCC a First Priority Mortgage ("Mortgage") dated October 16, 2003 on property described in the Mortgage as:

> Plot No. 5 Estate Marienhoj, East End Quarter "A," St. Croix, U.S. Virgin Islands, consisting of 0.8804 U.S. Acres, more or less, as more fully shown on OLG Drawing No. 2850, dated November 5, 1970, and revised March 29, 1994.[6]

("the Property") (Dkt. No. 42-2 at 1). The Mortgage was recorded at the Office of the Recorder of Deeds for St. Croix ("Recorder") on October 22, 2003. (Dkt. No. 42-2 at ¶ 5).[7]

Plaintiff further alleges that the Borrowers defaulted under the terms of the Note and Mortgage despite a demand to cure sent by Plaintiff. (Dkt. No. 1-2 at ¶9). Specifically, by correspondence dated December 14, 2012, Plaintiff gave notice of default to Plaskett advising that failure to cure the default would result in an acceleration of the debt and foreclosure of the Mortgage.[8] (Dkt. No. 42-7). Following Plaskett's failure to cure the default, Plaintiff declared as due and payable the entire unpaid principal sum along with interest and other charges. (Dkt. No.

---

[6] The Complaint similarly describes the Property, but refers to OLG Drawing No. 1797 rather than OLG Drawing No. 2850, as referred to in the Mortgage. (Dkt. Nos. 1-2 at ¶ 6; 42-2 at 1).

[7] Plaintiff further alleges that the Note and Mortgage were assigned by MLCC to Cendant Mortgage Corp., a predecessor in interest to PHH. The Assignment was executed on January 27, 2005 and recorded at the Office of the Recorder of Deeds for St. Croix on February 7, 2005 ("Assignment"). (Dkt. 1-2 at ¶ 7; 42-3).

[8] In two additional letters dated January 29, 2016 and September 30, 2016, Plaintiff advised Plaskett of the default and provided the outstanding balance on the loan. (Dkt. Nos. 42-8, 42-9).

1-2 at ¶ 10). Plaintiff further contends that it may be required to pay real property taxes, insurance premiums and other charges relating to the Property which, under the terms of the Mortgage, becomes part of the principal indebtedness owed by the Borrowers. *Id.* at ¶ 11.

Plaintiff claims that a Notice of Lien dated October 26, 2010 was recorded against the Property with the Recorder of Deeds on St. Croix by the DOJ on October 29, 2010. *Id.* at ¶ 12. Plaintiff alleges that the DOJ's lien is subordinate to Plaintiff's Mortgage. *Id.*

On January 26, 2016, Plaskett filed an Answer to the Complaint admitting only his residency and asserting an affirmative defense of failure to state a claim. (Dkt. No. 20).

On November 30, 2016, Plaintiff filed a "Motion for Summary Judgment" and accompanying filings. (Dkt. No. 41). In its Memorandum of Law, Plaintiff requests judgment against Plaskett for the debt owed, and states that it is entitled to foreclosure of the Mortgage, sale of the Property, and recovery of the debt owed. (Dkt. No. 42 at 6). Plaintiff also attached an Affidavit of Indebtedness establishing the authenticity of the relevant documents and Plaintiff's claim of the total indebtedness as of October 1, 2016. (Dkt. No. 42-10 at 1-2).

In a "Memorandum of Costs" attached to the Motion for Summary Judgment, Plaintiff argues that it is entitled to an award of $15,777.73, consisting of attorneys' fees in the amount of $14,703.50 and expenses in the amount of $1,074.23.[9] (Dkt. No. 42-11). Plaintiff also attached billing records listing the services billed by Plaintiff's prior counsel, a paralegal, and two legal assistants at the firm. (Dkt. No. 42-13).

---

[9] The Motion for Summary Judgment and the accompanying "Memorandum of Costs" were filed by Plaintiff's prior counsel, Richard Dollison, Esq. Therefore, the Memorandum of Costs only covers attorneys' fees and expenses billed by Attorney Dollison, other attorneys working with him and firm staff at his law firm.

In response to Plaintiff's Motion for Summary Judgment, Plaskett asserts that there are genuine issues of material fact with regard to Plaintiff's debt and foreclosure claims. (Dkt. No. 43 at 1).[10] Plaskett asserts that the United States had sought to execute on the Property for the recovery of a money judgment in a criminal matter against Plaskett[11]; Plaskett did not have possession of the Property at that time because Raymond Plaskett maintained a life estate in the Property; Plaintiff "remained silent" and acquiesced to the position of the United States by not opposing the United States' attempt to seize the Property; Plaskett relied on the United States' alleged representation that it could execute on the Property; Plaintiff did not commence any legal action between 2011 and 2015; Plaintiff did not contact Plaskett between 2012 and 2015 regarding the matter; and Plaskett detrimentally relied on the United States' actions and Plaintiff's alleged inaction in not paying the mortgage payments because he thought the Property had been seized. *Id.* at ¶¶ 4-7, 10-12. Therefore, Plaskett argues that Plaintiff should be estopped from foreclosing on the Property.

In addition, Plaskett argues that the doctrine of laches bars Plaintiff's foreclosure claims because Plaintiff did not demonstrate diligence to protect its interests in the property. *Id.* at pp.10-12. Plaskett asserts that despite Plaintiff's awareness that the United States had erroneously

---

[10] Along with his Opposition, Plaintiff attached the following as exhibits: the Deed conveying a life estate to Raymond Plaskett and the remainder to Dean C. Plaskett (Dkt. No. 43-1); the Judgment in *USA v. Plaskett* (Dkt. No. 43-2); photographs of a home and its surroundings identified by Plaskett as the subject Property (Dkt. No. 43-3); email communications between Plaskett and Plaintiff's prior counsel reflecting Plaskett's attempt to seek a loan modification (Dkt. Nos. 43-4, 43-5, 43-6, 43-7, 43-8, 43-9); Plaskett's filings and a Court Order in *USA v. Plaskett* (Dkt. Nos. 43-10, 43-11); and the docket sheet in this matter (Dkt. No. 43-12).

[11] Plaskett was convicted in *USA v. Plaskett*, Criminal Action No. 2007-0060, and a monetary judgment was assessed against him in the amount of $1,086,237.34. (Dkt. No. 43-2 at 2). In his Opposition, Plaskett represents that the United States sought a Writ of Execution against the Property in order to recover on that judgment.

attempted to execute on the Property in 2011, Plaintiff did not defend its priority Mortgage, but instead acquiesced to the position of the United States. *Id.* at 11. Plaskett asserts that he was "severely prejudiced by Plaintiff's inexcusable delay as the arrearages and expenses continued to mount unbeknownst to [him]." *Id.* at 12. Further, Plaintiff contends that the Property is now in "complete and total disrepair and has been ravaged by looters and vagrants"; the Property has decreased in value because Plaintiff did not maintain the Property; and Plaintiff has failed to mitigate its damages. *Id.*

In its Reply, Plaintiff maintains that it is entitled to summary judgment against Plaskett because there is no genuine issue of material fact that Plaskett is in default under the terms of the Mortgage. (Dkt. No. 45 at 1-2). Plaintiff disputes Plaskett's argument that it was required to seek foreclosure earlier and argues that it did not make any misrepresentations of fact to Plaskett that would allow for a successful claim of equitable estoppel. *Id.* at 2-4. Further, Plaintiff argues that the doctrine of laches does not apply to preclude its recovery on its debt and foreclosure claims because Plaskett has not presented evidence to indicate a lack of diligence or that he was prejudiced by Plaintiff. *Id.* at 5-6. Instead, Plaintiff argues that Plaskett has prejudiced himself by not curing the default and not maintaining the Property. *Id.*

Plaskett then filed a Sur-Reply. (Dkt. No. 46). In the Sur-Reply, Plaskett reiterates his arguments in the Opposition and maintains that Plaintiff did not take any action to oppose the United States' attempted seizure of the Property on which Plaintiff detrimentally relied. *Id.* In the "Motion to Strike Sur-Reply," Plaintiff requests that the Court strike the Sur-Reply from the record because it was improperly filed and merely restates Plaskett's arguments in his earlier filings. (Dkt. No. 47).

6

On February 1, 2017, the Magistrate Judge granted Plaskett's Motion to file an Amended Answer, which asserted the additional affirmative defenses of estoppel and laches. (Dkt. No. 57).

On December 3, 2020, Plaintiff filed a "Motion for Stay" requesting that the Court stay the matter for sixty days during the pendency of loss mitigation review. (Dkt. No. 82). The Magistrate Judge granted the stay. (Dkt. No. 84). Upon Motion of Plaintiff, the Magistrate Judge lifted the stay on February 1, 2021, after Plaintiff reported that loss mitigation review was not ongoing. (Dkt. No. 88).

On December 10, 2021, Plaintiff filed an Updated Affidavit of Indebtedness. (Dkt. No. 98-1). Nick Ruiz, Foreclosure Supervisor, averred that as of December 9, 2021, the Borrowers owed the following amounts: principal balance of $131,896.64; accrued interest from July 1, 2012 to December 15, 2021 of $77,942.67; escrow balance at loan transfer of $31,589.33; late charges of $1,960.33; insurance of $2,802.12; taxes of $337.04; and corporate advances of $40,586.53, for a total indebtedness of $287,115.31. *Id.* at 2. Ruiz asserts that interest accrues at the per diem rate of $22.59. *Id.*

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Summary Judgment

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, based on the uncontroverted facts, it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Thus, the moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Goldenstein*, 815 F.3d at 146 (citing *Celotex Corp.*, 477 U.S. at 322-24).

In reviewing a summary judgment motion, the district court is required to view all facts "in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Curto v. A Country Place Condominium Ass'n., Inc.*, 921 F.3d 405, 409 (3d Cir. 2019) (citations omitted). The role of the court is to "determine whether there is a genuine issue for trial." *Stiegel v. Peters Twp.*, 600 F. App'x. 60, 63 (3d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal quotation marks omitted)). A genuine issue of material fact exists when the fact-finder, viewing the record evidence, could rationally find in favor of the non-moving party. *See Pearson v. Prison Health Service*, 850 F.3d 526, 534 (3d Cir. 2017).

If the moving party has met this initial burden, the party opposing summary judgment must offer specific facts contradicting those averred by the movant to establish that a genuine issue of material fact exists. *Savage v. Pennsylvania Turnpike Comm'n*, 15-cv-6501, 2018 WL 2670037, at *14 (E.D. Pa. June 1, 2018) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The non-moving party cannot rely merely upon bare assertions, conclusory allegations, or suspicions to avoid summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

*Pro se* litigants are "held to 'less stringent standards' than trained counsel." *Benckini v. Hawk*, 654 F. Supp. 2d 310, 316 n.1 (E.D. Pa. 2009) (*quoting Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, when responding to a summary judgment motion, *pro se* parties still are responsible for pointing to competent evidence in the record that is capable of refuting the opposing party's motion. *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017). A *pro se* party cannot avoid summary judgment based upon "bald assertions" unaccompanied by evidentiary support. *Whitenight v. Elbel*, 2019 WL 6828653, at *2 (W.D. Pa. Dec. 13, 2019); *see also Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (*pro se* plaintiff "has before him the

formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'").

"Generally, debt actions are well suited for summary judgment. Because of the relative simplicity of the issues involved, suits to enforce promissory notes are among the most suitable classes of cases for summary judgment." *Flagstar Bank, FSB v. Lyles*, Civil Action No. 2014-0105, 2017 WL 987448, at *3 (D.V.I. 2017) (internal quotation marks and citations omitted). To succeed in a debt and foreclosure action, the plaintiff must prove three elements: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *Brouillard v. DLJ Mortg. Capital, Inc*., 63 V.I. 788, 793 (2015); *see also Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 232 (V.I. 2013); 55 Am. Jur. 2d Mortgages § 604 (2019) (foreclosure requires a valid mortgage, default on part of mortgagor, and foreclosure in compliance with terms of contract).

Where there is no dispute that the mortgagor has failed to pay its obligations under the mortgage and the recorded mortgage is in a specified amount, summary judgment is appropriate. *See U.S. Bank National Association v. Chetty Limited Partnership*, Civil Action No. 17-5127, 2018 WL 4300949, at *4 (E.D. Pa. Sept. 10, 2018) (summary judgment is proper when debtor admits it has failed to pay the debt, and the recorded mortgage is in the specified amount); *Wilson v. Parisi*, 549 F. Supp. 2d 637, 655 (M.D. Pa. 2008) (same).

## III.    DISCUSSION

### A.    Summary Judgment against Defendant Plaskett

Plaintiff has satisfied all of the requirements necessary to maintain a successful debt and foreclosure action against Plaskett. First, Plaintiff has submitted a copy of the Note, dated October

16, 2003, executed by the Borrowers, who promised to pay Plaintiff the principal sum of $151,698.00, together with interest at a rate of 6.25% per annum in monthly installments of $934.03. (Dkt. No. 42-1). Plaintiff also submitted a copy of the Mortgage, dated October 16, 2003, executed by the Borrowers to secure payment on the Note. (Dkt. No. 42-2). Based on the foregoing, Plaintiff has shown that the Borrowers executed the Note and the Mortgage. Accordingly, because there is no genuine dispute of material fact as to whether the Borrowers executed these documents, Plaintiff has satisfied the first requirement to succeed on a debt and foreclosure action.

Plaintiff has also satisfied the second requirement to succeed on a debt and foreclosure action. Plaintiff has provided evidence that the Borrowers are in default on the Note and Mortgage for failing to make payments due under those documents, and that it is entitled to foreclose on the Property. Following default on the loan, Plaintiff sent a letter dated December 14, 2012 addressed to the Borrowers in which Plaskett was advised that they were in default and were required to pay the past due amount or all amounts due could be accelerated and the Property sold. (Dkt. Nos. 42-7). Plaintiff then sent two additional letters dated January 29, 2016 and September 30, 2016 to Plaskett advising that the loan was in default and providing the outstanding balance due on the loan. (Dkt. Nos. 42-8, 42-9). Thus, the evidence shows that the Borrowers defaulted on the loan and that Plaskett was so advised.

Plaintiff has also satisfied the third requirement for a debt and foreclosure claim. Plaintiff asserts that it owns and holds the Note and Mortgage—copies of which were attached to its Motion for Summary Judgment (Dkt. Nos. 42-1, 42-2)—and it is entitled to foreclose on the Property. Plaintiff has shown that through an Assignment of Mortgage it currently retains all right, title, and interest in the subject Note and Mortgage. (Dkt. Nos. 42-3, 92-1). In addition, the Mortgage provides that "[i]f the default is not cured on or before the date specified in the notice, Lender at

10

its option may require immediate payment in full of all sums … and may foreclose this Security

Instrument by judicial proceeding." (Dkt. No. 42-2 at ¶ 21). Plaintiff's ownership of the Note and

Mortgage and its right to foreclose on the Property in this matter have thus been demonstrated.

Finally, Plaintiff has also shown with specificity how it calculated the amount due on the

account by providing an Updated Affidavit of Indebtedness. Based on the Affidavit and supporting

documentation provided, Plaskett is indebted to Plaintiff in the amount of $276,871.45 consisting

of a principal balance of $131,896.64; accrued interest from July 1, 2012 to December 15, 2021 of

$77,942.67; accrued interest from December 16, 2021 until the date of entry of Judgment of

$14,773.86[12]; escrow balance at loan transfer of $31,589.33; late charges of $1,960.33; insurance

of $2,802.12; taxes of $337.04; and corporate advances of $15,569.46.[13]

---

[12] Plaintiff has established that interest accrues on the indebtedness at the per diem rate of $22.59
from December 16, 2021 up to and including the date of entry of Judgment. Accrued interest is
therefore calculated as: $22.59 per diem rate *x* 654 days = $14,773.86.

[13] On August 11, 2023, the Court ordered Plaintiff to submit a filing to the Court to provide full
titles for abbreviated titles and to identify with specificity what comprises the sum of $40,586.53
in "Corporate Advances." (Dkt. No. 101). On August 18, 2023, Plaintiff filed a Notice with the
Court explaining that "Corporate Advances" constituted property inspection fees; foreclosure legal
fees and costs; and property preservation costs. (Dkt. No. 102 at 1). Plaintiff states that it incurred
$15,569.46 in property inspection fees (periodic external inspections) and property preservation
costs (basic maintenance, landscaping, and lawn care) during the course of the foreclosure process.
*Id.* at 2. Additionally, Plaintiff states that it identified another $160.00 sum that could not be linked
to a specific line item on its attached "Transaction Detail" itemization attached to the Notice. *Id.*
at n.1. Plaintiff states that because the $160.00 amount is not included in the $40,586.53 sum,
"Plaintiff defers to the Court's discretion as to whether the additional $160.00 may be recovered."
*Id.* The Court will not award the additional sum of $160.00 because Plaintiff cannot identify—by
its own admission—what constitutes such sum, and the Court cannot ascertain whether such costs
are reasonable and allowed under the terms of the Note and Mortgage. Therefore, the Court will
award the $15,569.46 in property inspection fees and property preservation costs.

Plaintiff requests that the Court exclude from the Judgment the total legal expenses of $25,017.07
because Plaintiff "intends to file a separate and fully supported motion for costs and attorney fees
after entry of judgment." *Id.* at 1-2. However, the Court will address herein the request for
attorneys' fees and expenses in the amount of $15,777.73 submitted by Plaintiff's prior counsel

The Court finds that this evidence is sufficient to shift the burden to Plaskett to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable fact finder could rule in [his] favor" regarding the debt and foreclosure causes of action. *Hart v. Electronic Arts, Inc.*, 717 F.3d 141,148 (3d Cir. 2015). Plaskett has failed to carry his burden.

As previously noted, Plaskett invokes the doctrine of equitable estoppel in his Opposition and his Sur-Reply.[14] (Dkt. Nos. 43 at 5-10, 46 at 2). To successfully claim equitable estoppel, the asserting party must demonstrate that (1) the party to be estopped made a material misrepresentation, (2) that induced reasonable reliance by the asserting party, and (3) that the reasonable reliance was to the asserting party's detriment. *Browne v. Stanley*, 66 V.I. at 328, 334-335 (citing *Joseph v. Inter-Ocean Insurance Agency, Inc.*, 59 V.I. at 820, 838 (2013)); *see also In re Jade Management Services*, Civil No. 2005-0148, 2009 WL 1421276, at *5 (D.V.I. May 20, 2009) (setting out the elements for equitable estoppel). "The burden of proof for a claim based on the principles of equitable estoppel rests on the party claiming the estoppel, and thus requires that the party demonstrate the exercise of due diligence prior to acting such that the reliance could be considered reasonable under the circumstances." *Smith v. McLaughlin*, Case No. ST-09-CV-621, 2019 WL 11768971 at, *5 (V.I. Super. Oct. 22, 2019) (citing *Browne*, 66 V.I. at 336-37). The existence of reasonable reliance and detriment "depends upon the facts of each particular case." *Id.*

---

for legal work billed from August 21, 2014 through November 30, 2016, which was briefed in the "Memorandum of Costs" accompanying the Motion for Summary Judgment.

[14] Although Plaskett did not seek leave of Court to file a sur-reply, as required by Local Rule 7.1(a), the Court, in its discretion, will deny Plaintiff's "Motion to Strike Sur-Reply" (Dkt. No. 47) given that Plaskett was proceeding *pro se* at the time of the filing. *See, e.g., Callwood v. Ferdi's Forest, Inc*., Civil Action No. 2019-0033, 2021 WL 5545235, at *1 n.1 (D.V.I. Nov. 26, 2021) (internal citations omitted) (accepting party's sur-reply submission in consideration that he was proceeding *pro se*).

Viewing the evidence in the light most favorable to Plaskett, his assertions do not raise any genuine issues of material fact such that a reasonable fact finder could find in his favor. First, Plaskett rests his estoppel argument on the Untied States' attempt to obtain a Writ of Execution against the Property in 2011. (Dkt. No. 43 at 7-10). However, there is no record evidence—and Plaskett has offered none—to suggest that there was any misrepresentation made by Plaintiff. Plaskett's suggestion that Plaintiff's lack of involvement in the United States' alleged unsuccessful attempt to seize the Property in Plaskett's criminal proceeding somehow negated Plaintiff's earlier default-related notices and reflected an intent by Plaintiff not to enforce the Note and Mortgage is a far cry from evidence of a misrepresentation by Plaintiff. Plaskett offers no legal authorities or factual bases to suggest otherwise.[15] Therefore, the first element of Plaintiff's estoppel claim— that the party to be estopped made a material misrepresentation—fails. This failure to show evidence of a misrepresentation by Plaintiff is, by itself, sufficient to establish that Plaskett has failed to raise a genuine issue of material fact based on his estoppel claim. *See, e.g.*, *LPP Mortg., Ltd. v. Caledonia Springs, Inc.,* No. CIVA 02-0172, 2007 WL 6035933, at *9 (D.V.I. Nov. 6, 2007) (finding that the defendants did not present evidence to create a genuine issue of material fact on issue of equitable estoppel where defendants failed to allege that the SBA made a statement

---

[15] In a letter dated May 16, 2016 from Plaskett to Plaintiff's prior counsel, Plaskett states that in a conversation between Plaskett and Plaintiff's counsel, the counsel stated: "[Plaintiff] did nothing because they were basically waiting to see what the Government would do relevant to its attempt to seize the Property." (Dkt. No. 43-9 at 3). Plaskett also states, "I further advised you that during the period in question, I was being told *by my family* that the property was seized by the [f]ederal [g]overnment." *Id*. By Plaskett's own statements in the letter, there is no evidence to suggest that, for purposes of an estoppel claim, *Plaintiff* made any representations to Plaskett to suggest that the Property had been seized by the United States, or that due to any such action, Plaskett would not be liable for the outstanding debt.

regarding its willingness or unwillingness to accept their offer in compromise such that the defendants relied on the statement in doing so).

Second, because there was no misrepresentation by Plaintiff, there was no inappropriate action by Plaintiff on which Plaskett could have reasonably relied. The record reflects that whether the United States rightly or wrongly attempted to execute on the Property, it was not successful in doing so. In fact, Plaskett acknowledges in his Opposition that the United States "took no further action after its initial attempt to seize the subject property [and] [i]t's execution action has remained dormant." (Dkt. No. 43 at ¶ 7). Moreover, Plaskett has not submitted evidence demonstrating that during the "dormancy"—between 2011 and 2015[16]—that he attempted, with any *diligent* effort, to inquire further of the United States or Plaintiff, or indeed, to confirm whether the Property had in fact been seized by the United States.[17]  In the absence of any diligence—let alone due diligence by Plaintiff—any alleged reliance would be unjustified.[18]

---

[16] In his Opposition, Plaskett contends that Plaintiff took no action in *USA v. Plaskett* or for nonpayment on the Note between March 14, 2011 and October 2015—the dates of the filing of the Writ of Execution in *USA v. Plaskett* and the commencement of the foreclosure action in the Superior Court of the Virgin Islands, respectively. (Dkt. No. 43 at 8).

[17] In an email to Plaintiff's prior counsel in 2016, Plaskett states that he sent counsel an email "some time in 2013 asking to communicate regarding this matter." (Dkt. No. 43-4 at 2). In response, Plaintiff's prior counsel states that he did not receive the correspondence. *Id.* Plaskett's 2013 email has not been submitted to the Court. In any event, Plaskett has not submitted any evidence to show that he relied on any representations from Plaintiff—at any point—suggesting that the Property was seized by the United States and thus Plaskett no longer had an obligation to make the loan payments.

[18] Plaskett's additional arguments regarding the actions taken by the United States in *USA v. Plaskett* do not raise any dispute as to the debt owed and Plaskett's liability for the debt. Plaskett argues that his Motion to Quash the Writ of Execution was denied by the Court in *USA v. Plaskett*, and thus, he had "no knowledge of the misrepresented legal basis" of the United States in seeking the Writ. (Dkt. No. 43 at 10). However, an Order in *USA v. Plaskett* attached to Plaskett's Opposition shows that the Motion to Quash the Writ was dismissed following the Court's approval of a Stipulation between Raymond Plaskett and the United States, which addressed the Writ of Execution. (Dkt. No. 43-11). In any event, Plaskett's arguments are misguided. The issue is not whether the United States asserted any alleged "misrepresented legal basis" as grounds for seizing

In short, Plaskett's estoppel argument fails to raise any genuine issue of material fact that would preclude the entry of summary judgment in favor of Plaintiff.

Plaskett also has not raised any genuine issue of material fact based on his claim of laches. Laches is an equitable, affirmative defense that bars a claim "where there has been an inexcusable delay in prosecuting the claim in light of the equities of the case and prejudice to the defendant from the delay." *Matter of Est. of Skelton*, 2019 WL 11790184, at *4 (V.I. Super. Nov. 7, 2019) (citing *Hamed v. Yusuf*, 69 V.I. 168, 188 (V.I. Super. 2017)). "A finding of laches requires two elements:

> (1) delay by a party in asserting a known right or claim, or, stated otherwise, lack of diligence, lapse of time, or failure timely to assert such right or claim; and (2) prejudice, injury, harm, hardship, damage, disadvantage, unfairness, injustice, inequity, or change of position, circumstances, or condition, that is caused by or results from the delay."

*Skelton,* 2019 WL 11790184, at *4 (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 357 (2007)). Laches is not "a mere matter of time; but principally a question of the inequity [of] permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." *Dewerd v. Bushfield*, No. CIV. APP.1993-184, 1995 WL 455833, at 1* (citing *Ward v. Sherman*, 192 U.S. 168, 176 (1904)).

Plaskett argues that the doctrine of laches should be applied here because Plaintiff knew that the United States wrongfully attempted to execute upon the Property in the criminal proceeding in 2011; failed to oppose such action by the United States and instead remained silent; and commenced this foreclosure action four years later after non-payment on the loan. (Dkt. No.

---

the Property, but whether *Plaintiff* made any misrepresentation to Plaskett upon which he reasonably relied. Plaskett has identified no such misrepresentation—seemingly because there was none. Simply stated, Plaskett does not provide any evidence of statements or representations that were made by Plaintiff regarding the United States' actions which would have caused Plaskett to reasonably believe that the Property had been seized by the United States.

43 at 10-11). Plaskett contends that such delay was inexcusable. *Id.* at 11. Further, Plaskett argues that he was severely prejudiced because the loan amount continued to increase "unbeknownst" to him and the Property is now in "complete and total disrepair" due to vagrants and looters destroying the Property. *Id.* Plaskett contends that Plaintiff failed to mitigate its damages by not acting with diligence to protect its interest in the Property. *Id.* In his Motion to Supplement filed on November 15, 2017, Plaskett further argues that Plaintiff did not protect the Property from damages sustained due to the occurrence of Hurricanes Irma and Maria; the Property has suffered structural damages; and Plaintiff has failed to mitigate its damages by failing to protect the Property from such damages thereby allowing the value of the Property to decrease. (Dkt. No. 69 at 1-2). These arguments are unavailing.

First, Plaskett's delay argument fails. As Plaintiff acknowledges, the terms of the Note provide: "Even if, at a time when [the borrower] [is] in default, the Note Holder does not require [the borrower] to pay immediately in full … the Note Holder will still have the right to do so if [the borrower is] in default at a later time." (Dkt. No. 42-1 at ¶ 6). Therefore, Plaintiff was not required to move forward on the foreclosure proceeding at the time of the initial default, or at, any specific time. And, without establishing an inexcusable and unauthorized delay, the fact that Plaintiff did not move forward earlier did not preclude it from doing so later. Accordingly, the Court finds that the doctrine of laches does not raise a genuine issue of material fact so as to bar summary judgment.

While the Court will exercise its discretion to grant Plaskett's Motion to Supplement,[19] the arguments raised therein do not create any genuine issue of material fact as to the debt and

---

[19] Plaskett seeks leave pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure to file his Motion to Supplement. (Dkt. No. 69). Plaintiff has since filed a Response objecting to the filing

foreclosure claims in this case. Plaskett offers no evidence to suggest that the maintenance of the Property was Plaintiff's responsibility. In fact, the terms of the Mortgage provide that the "[b]orrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property." (Dkt. No. 42-2 at ¶ 6). Further, the terms of the Mortgage allow Plaintiff "to do and pay for whatever is necessary to protect the value of the Property and [Plaintiff's] rights in the Property," but "[Plaintiff] does not have to do so." [20] Accordingly, because the terms of the Mortgage cast the responsibility on Plaskett to maintain the Property, Plaskett's attempt to place the onus of responsibility on Plaintiff for the physical condition of the Property and purported depreciation of the value of the Property is to no avail. *See Fed. Nat'l Mortg. Ass'n v. Teel,* No. SX-13-CV-219, 2016 WL 6126471, at *2 (V.I. Super. Oct. 14, 2016) (finding summary judgment was appropriate where defendants did not offer evidence to suggest that maintenance of the property was the legal responsibility of Plaintiff such that there was a genuine issue of material fact as to Plaintiff's alleged failure to mitigate damages).

In view of the foregoing, Plaskett does not put forth any evidence that creates a genuine issue of material fact as to the debt owed and Plaintiff's entitlement to foreclose.

## B.    Summary Judgment against the DOJ

In its Motion, Plaintiff has not expressly stated that it is seeking summary judgment against DOJ. Yet, under Virgin Islands law, "[w]hen a judgment is given foreclosing two or more liens

---

of the Motion, but responding to Plaskett's arguments regarding Plaintiff's alleged failure to protect and maintain the property. (Dkt. No. 70).

[20] While Plaskett asserts that vagrants occupied the Property, Plaskett also complains that Plaintiff placed locks on the doors of the house to deprive him of access. (Dkt. No. 69 at 1). However, Plaintiff asserts that such locks were placed to protect and preserve the Property (Dkt. No. 70 at 4), which the Court finds is consistent with the terms of the Mortgage that allows Plaintiff to do "whatever is necessary to protect the value of the Property" (Dkt. No. 42-2 at ¶ 7).

upon the same property or any portion thereof in favor of different persons not united in interest[,] such judgment shall determine and specify the order of time, according to their priority, in which the debts secured by such lien shall be satisfied out of the proceeds of the sale of the property." 28 V.I.C. § 533; *Newrez v. Kaiser*, Civil Action No. 2017-0025, 2023 WL 4953168, at *6 n. 10 (D.V.I. Aug. 3, 2023).

"When determining the priority of liens, the Virgin Islands is a race notice jurisdiction." *Kennedy Funding, Inc. v. Oracle Bus. Devs., LLC*, Civil Action No. 2012-0009, 2016 WL 447843, at *7 (D.V.I. Feb. 4, 2016). Thus, an earlier recorded instrument takes priority over a later filed instrument. *See Moco Inves., Inc. v. United States*, 362 F. App'x 305, 309 (3d Cir. 2010). Based on the record, Plaintiff's Mortgage was recorded on October 22, 2003, while the United States' lien was recorded on October 29, 2010. (Dkt. No. 42 at ¶¶ 7, 14). Because Plaintiff's lien was recorded prior to that of the DOJ, Plaintiff has a first priority lien on the Property, while the DOJ has a second priority lien.

Accordingly, Plaintiff is entitled to summary judgment against the DOJ as to the priority of the liens on the Property.

### C.   Attorneys' Fees and Expenses

#### 1.   Attorneys' Fees

In an Affidavit attached to the Motion, Plaintiff has also requested an award of attorneys' fees in the amount of $14,703.50 and expenses in the amount of $1,074.23, for a total of $15,777.73. (Dkt. No. 42-12). Plaintiff's prior counsel, Richard Dollison, Esq., states that his hourly rate is $250.00, and the hourly rate of Associate Attorneys Carol McDonald and Michelle LaRochelle is $225.00. *Id.* Attorney Dollison also attests that the hourly billing rate of Litigation Paralegal Irene Quetel is $185.00, while the hourly billing rate for Legal Assistants Donna Greaux

and Jennifer Quetel as $135.00.[21] *Id.* In support of the request, Plaintiff submitted billing records for services performed by counsel between August 21, 2014 and November 30, 2016. (Dkt. No. 42-13). Each billing entry includes columns for the date the work was performed; the initials of the attorneys, litigation paralegal, or legal assistants; a brief description of the work performed; the time spent and hourly rate; and the total dollar amount billed for each entry. (Dkt. No. 42-13).

The Virgin Islands statute governing attorneys' fees provides, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties...." 5 V.I.C. § 541(b). The Supreme Court of the Virgin Islands has held, however, that "although a fee arrangement for legal services is a matter of contract between the client and the attorney, courts will enforce only reasonable attorneys' fees, even if the contract itself is otherwise enforceable." *Rainey v. Hermon*, 55 V.I. 875, 880-81 (2011); *see also Abramovitz v. Lynch*, Civil No. 2005-92, 2007 WL 1959164, at *1 (D.V.I. June 26, 2007) (courts should not enforce contractual provisions that allow unreasonable attorneys' fees); *Yearwood Enterprises, Inc. v. Antilles Gas Corp.*, 2017 WL 6316625, at *3 n.21 (V.I. Super. Dec. 5, 2017) ("Regardless of whether the relief is awarded under V.I.R. Civ. P. 54 or 5 V.I.C. § 541(b), the Court must consider whether the attorney's fees and costs are reasonable."). In addition, the Virgin Islands Rules of Professional Conduct forbid any attorney from making any agreement for or charging "unreasonable fee[s]" or expenses. V.I. Sup. Rule 211.1.5(a). The terms of the Mortgage here also state that Plaintiff may recover "reasonable" attorneys' fees. (Dkt. No. 42-2 at ¶ 21). Therefore, the Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorneys' fees may be "reasonable." *See Phillips v. FirstBank Puerto Rico*, Civ. No. 13-105,

---

[21] The billing records reflect that Legal Assistant Quetel billed at two hourly rates: $130.00 and $135.00. (Dkt. No. 42-13 at 4).

2018 WL 1789546, at *3 (D.V.I. Apr. 12, 2019) (observing that the inclusion of attorneys' fees within the definition of reasonable costs is derived from 5 V.I.C. § 541).

"To determine a fair and reasonable award of attorneys' fees under 5 V.I.C. § 541(b), the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *United States v. Woods*, Civil Action No. 2014-0111, 2016 WL 6471448, at *9 (D.V.I. Oct. 31, 2016) (quoting *Staples v. Ruyter Bay Land Partners, LLC*, Civil Action No. 2005-0011, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases)). Generally, when evaluating the reasonableness of a claim for attorneys' fees, the court undertakes a two-step analysis. First, the court determines whether the hourly rate sought is reasonable in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Williams v. Ranger American of V.I., Inc*., Civ. No. 14-00017, 2017 WL 2543293, at *1 (D.V.I. June 12, 2017) (citing *Baumann v. Virgin Islands Water & Power Auth.*, Civ. No. 13-02, 2016 WL 1703312, at *1 (D.V.I. Apr. 27, 2016)); *see also Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (determining appropriate hourly rate by comparing the experience and skill of prevailing party's attorneys with that of local attorneys with comparable skill, experience, and reputation). The second step requires the court to decide whether the total hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Phillips*, 2018 WL 1789546, at *3 (quoting *Flagstar Bank, FSB v. Stridiron*, Civil Action No. 2011-046, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013)).

### a. Billing Rates

Turning first to the hourly rate charged, the Court considers whether counsel has established reasonable billing rates. Traditionally, Virgin Islands courts "'have generally

concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour.'" *Williams*, 2017 WL 2543293, at *2; *see also Bank of Nova Scotia v. Davis*, Civil Action No. 2017-41, 2019 WL 7593154, at *2 (D.V.I. Sept. 13, 2019) (acknowledging attorneys' rates generally spans from $125 to $300 per hour); *Ditech Financial, LLC v. Felice*, Civil No. 2016-94, 2019 WL 4941365, at *3 (D.V.I. Aug. 6, 2019) (awarding attorneys' fees at an hourly rate of $250 for a standard residential mortgage foreclosure case). More recently, however, hourly rates of up to $350.00 depending on the experience level of the attorney and the complexity of the case—have been found to be reasonable rates charged in the Virgin Islands. *See, e.g., Herishetapaheru v. Firstbank Puerto Rico*, Civil Action No. 2016-0057, 2022 WL 991327, at *3 (D.V.I. Mar. 31, 2022) (allowing $325.00 in attorneys' fees based on the attorney's level of experience); *High Times VI Enterprises, LLC v. Rahhal*, 74 V.I. 304, 310 (V.I. Super. Ct. Apr. 14, 2021) ("The Court finds that Plaintiff's counsel's rate of $350.00 per hour to be consistent with the customary and prevailing market rates that similarly experienced attorneys charge in the U.S. Virgin Islands."); *Roy v. Poleon*, ST-13-cv-525, 2018 WL 6721399, at *2 (V.I. Super. Dec. 14, 2018) (allowing $350.00 per hour to senior attorneys in complex civil action); *Freund v. Liburd*, No. ST-11-cv-730, 2017 WL 11596465, at *3 (V.I. Super. Dec. 20, 2017) (allowing $340.00 to $350.00 per hour for senior partners in complex contract, foreclosure, and contribution case).

In view of the foregoing, the Court finds that the $250.00 hourly billing rate charged for Attorney Dollison and the $225.00 hourly billing rate charged for Attorneys McDonald and LaRochelle for services performed between August 21, 2014 and November 10, 2016 are reasonable and falls within the range of rates typically charged for a foreclosure matter. *See Ditech Fin.*, 2019 WL 4941365, at *3 (finding a $250.00 hourly billing rate to be reasonable); *see also Flagstar Bank, FSB v. Walcott*, Civil Action No. 2018-0037, 2022 WL 4094075, at *3 (D.V.I.

Sept. 6, 2022) (same); *Cohen v. Skepple*, Civil Action No. 2011-0076, 2014 WL 2520260, at *2 (D.V.I. June 4, 2014) (finding a $225.00 hourly billing rate to be reasonable); *FirstBank Puerto Rico v. Christopher*, Civil Action No. 2013-1993, 2015 WL 883830, at *7 (Feb. 27, 2015) (same).

The billing records also contain time billed to Litigation Paralegal Irene Quetel and Legal Assistants Donna Greaux and Jennifer Quetel. (Dkt. No. 42-13). In its Memorandum of Costs, Plaintiff cites a number of District Court cases that have allowed paralegal fees, and some that have denied them. (Dkt. No. 42-11). Plaintiff also cites 5 V.I.C. § 531(a), which provides that foreclosures are equitable proceedings and argues that the Court should include paralegal fees in an award of attorneys' fees to encourage the use of paralegals as a cost-saving measure. *Id.*

The Court recognizes that work performed by paralegals that might otherwise have been performed by a licensed attorney at a higher rate is more cost effective and efficient. In addition, although the Court also recognizes that, in the past, it has awarded attorneys' fees for paralegal services, this is an issue of local law and this Court is required to follow local law when assessing whether attorneys' fees are reasonable. In this regard, the local courts have not interpreted 5 V.I.C. § 541(b) as allowing an award of fees for the work of paralegals. *See, e.g.*, *Roy*, 2018 WL 6721399, at *3 (citing various Superior Court opinions disallowing such fees).[22] Absent clear language in

---

[22] The Court acknowledges that there are inconsistent opinions in both the District Court and the Superior Court on this issue, but the prevailing view in the Superior Court still appears to disallow these costs, considering them instead as overhead. *Bobax Ventures, LP v. Inner Circle Logistics, Inc.*, 75 V.I. 214, 224 (V.I. Super. Jan. 25, 2022) (denying plaintiff's request for paralegal's fees and noting that 5 V.I.C. § 541 does not include paralegal's fees in list of costs that may be allowed); *Kokinda v. Thelusma*, SX-13-CV-254, 2017 WL 3612352, at *3 (V.I. Super. Aug. 18, 2017) (paralegal fees not recoverable under 5 V.I.C. § 541); *Gov't of the V.I., Dep't of Educ. v. St. Thomas/St. John Educ. Admr's Ass'n Local 101*, Case No. ST-13-CV-499, 2017 WL 3379568, at *2 (V.I. Super. Aug. 1, 2017) (rejecting claims for work performed by paralegals and non-attorney staff as the claims are part of normal overhead costs); *Creative Minds, LLC*, Case No. ST-11-CV-131, 2014 WL 4908588, at *4 (V.I. Super. Sept. 24, 2014) (disallowing paralegal fees as overhead); *Mahabir v. Heirs of George*, CIVIL NO. ST. 09–CV–231, 2014 WL 1392954, at *1 (V.I. Super. Apr. 4, 2014) (same); *Chapa v. Sepe*, No. ST–12–CV–504, 2013 WL 8609242, at *1

the contract, this Court has generally followed the Superior Court in disallowing paralegal fees. *See LLP Mortg., Inc. v. Club Comanche, Inc.*, No. CV 2014-0057, 2020 WL 4717490, at *11 (D.V.I. Aug. 12, 2020); *Woods*, 2016 WL 6471448, at *10 (noting that the Court would follow the lead of local courts in disallowing paralegal fees). *Cf. Bank of Nova Scotia v. Robinson*, Civil Action No. 2016-0029 2018 WL 1513269, at *4 (Mar. 27, 2018) (paralegal fees allowed because contract specifically defined "attorney's fees" to include time billed by paralegals and law clerks). Accordingly, based on the weight of the local court authority, this Court will not award the requested paralegal fees. Accordingly, the Court will disallow the 10.3 hours billed by Litigation Paralegal Irene Quetel and Legal Assistants Donna Greaux and Jennifer Quetel, thereby reducing Plaintiff's fee request by $1,763.50.[23] With this reduction, the total amount of fees requested is $12,940.00.[24]

---

(V.I. Super. June 3, 2013) (finding no authority for the awarding of fees for paralegals); *In re Estate of Vialet*, 24 V.I. 16, 27 (V.I. Terr. 1988); *but see LPP Mortg., Ltd. v. Carpenter,* Civil Action No. 09-15, 2022 WL 4000926, at *3 (D.V.I. Sept. 1, 2022) (allowing for paralegal fees); *Lakeview Loan Servicing, LLC v. Singh*, 2021 WL 3214782, at *4 (V.I. Super. July 28, 2021) (noting that Title 5 V.I.C. § 541 would not allow plaintiff to recover paralegal's fees, but allowing such fees under the terms of the Note and Mortgage); *In re Estate of Benjamin*, 70 V.I. 110, 117-18 (V.I. Super. Feb. 21, 2019) (citing District Court opinion finding that the term "attorneys' fees" embraces paralegal fees). Further, in *Williams v. United Corp*, 2009 WL 321339, at *3 (V.I. 2009), the Virgin Islands Supreme Court found that paralegal fees are "of the same nature" as attorneys' fees, but did not determine that paralegal fees can be included as attorneys' fees under § 541. *See Lakeview Loan Servicing, LLC*, 2021 WL 3214782, at * 4 n.4; *Roy*, 2018 WL 6721399, at *3 n.3.

[23] The billing records reflect the following amount of time billed for the attorneys, litigation paralegal, and legal assistants:

| | | |
|---|---|---|
| Litigation Paralegal Irene Quetel: | 7.6 hours *x* $185.00 = $1,406.00 | |
| Legal Assistant Donna Greaux: | 0.7 hours *x* $135.00 = $94.50 | |
| Legal Assistant Jennifer Quetel: | 1.4 hours *x* $130.00 = $182.00 | |
| | 0.6 hours *x* $135.00 = $81.00 | |

**Total:** $1,763.50

[24] Attorney Richard Dollison:          18.1 hours *x* $225.00 = $4,525.00

**b**.        **Reasonableness of Hours Expended**

Next, the Court addresses whether Plaintiff's claimed hours were "reasonably expended."

*Phillips*, 2018 WL 1789546, at *3 (D.V.I. Apr. 12, 2018) (quoting *Stridiron*, 2013 WL 5941298,

at *6 (D.V.I. Oct. 31, 2013)).

Following the reduction of the requested fees discussed above, Plaintiff's counsel seeks

55.5 hours for a total of $12,940.00 in fees. The Court finds that the amount of time billed by

Plaintiff's counsel in this matter—55.5 hours—is higher than usual for a foreclosure matter. Except

for the additional hours billed for addressing matters related to the death of Raymond Plaskett and

the dismissal of Marienhoj, the legal work performed is typical of work performed through the

filing of a motion for summary judgment in a "run-of-the-mill debt and foreclosure [case]."

Plaintiff's billing records do not include any work performed related to addressing Plaskett's later

responses to the Motion for Summary Judgment. Based on the billing records, the work did not

deal with any extraordinary or complex issues that would justify the $12,940.00 in requested fees.

Indeed, "the issues [were] not novel, but rather, relatively commonplace." *Bank of Nova Scotia v.*

*Christian*, Civil Action No. 2012-0006, 2015 WL 4599363, at *7 (D.V.I. July 30, 2015) (citing

*FirstBank Puerto Rico v. Caribbean Island Adventure, Inc*., Civil No. 2005-27, 2008 WL 783537,

at *2 (D.V.I. Mar. 20, 2008)). Therefore, the Court will reduce the $12,940.00 sum by sixty percent

and will award attorneys' fees in the amount of $5,176.00. The Court finds that this amount is

more reasonable and more comparable with awards in routine—even contested—debt and

foreclosure matters. *See, e.g.*, *Bank of Nova Scotia v. Christian*, Civil Action No. 2012-0006, 2015

---

Attorney Mary LaRochelle:        4.7 hours   *x* $225.00 = $1,057.50
Attorney Carol McDonald:         32.7 hours *x* $225.00 = $7,357.50

---

**Total:** $12,940.00

WL 4599363, at *7 (D.V.I. July 30, 2015) (reducing sum requested by sixty percent from $12,290.50 to $4,916.20 in attorneys' fees); *Bank of Nova Scotia v. Ross*, No. CV 2010-118, 2014 WL 4801086, at *9 (D.V.I. Sept. 26, 2014) (reducing requested sum slightly over sixty percent where there was a "run-of-the mill" debt and foreclosure claims although defendant contested summary judgment).

### 2.   Expenses

The Supreme Court of the Virgin Islands has opined that "costs" and "expenses" do not cover the same outlays of funds. In *Terrell v. Coral World*, 55 V.I. 580 (V.I. 2011), the court noted that Title 5, Sections 541 through 547, "govern the award of costs to a prevailing party in civil litigation." *Id.* at 584. The *Terrell* court observed that "'costs are not synonymous with expenses unless expressly made so by statute.'" *Id.* at 591 n.14 (citation omitted). With regard to "expenses"—those case-related expenditures that do not qualify as "costs" under applicable statutes—such payments may be reimbursed if allowed by the parties' contract, because courts generally enforce the terms of contracts. *See Audubon Engineering Co. LLC v. Int'l Procurement & Contracting Group LLC*, 647 F. App'x 95, 100 n.4 (3d Cir. 2016) (Plaintiff was entitled to attorneys' fees pursuant to contract); *Rainey v. Hermon*, 55 V.I. at 886 (court permitted party to recover legal fees and administrative costs allowed by its contract, "unless the fee is unreasonable.").

In order to recover "expenses"—non-statutory costs which are permitted to be recovered under the terms of the contract—those expenses must be reasonable. *See Rainey*, 55 V.I. at 880-81. Under Virgin Islands law, reasonable expenses related to title searches, filing and recording fees, and process server fees are appropriate expenses that may be recovered. *Matrix Financial Services Corp. v. Laurent*, Civil Action No. 2014-0069, 2016 WL 2757698, at *6. However, "it is

well-established that "overhead costs," such as regular postage, photocopies, and telephone calls, are not compensable under § 541 as costs." *See Kennedy Funding, Inc. v. Oracle Bus. Devs., LLC*, No. CV 2012-0009, 2017 WL 1658827, at *7 (D.V.I. May 1, 2017) (citing *Creative Minds, LLC v. Reef Broad., Inc.*, No. ST-11-CV-131, 2014 WL 4908588, at *1).

With regard to on-line legal research, the Court is unaware of any case law in the Virgin Islands regarding the reasonableness of on-line legal research as an expense. Such case law does exist concerning the propriety of reimbursement of this kind of expenditure in the context of costs. Courts have disallowed costs for computerized legal research as they are considered part of overhead expenses. *Caterpillar Fin. Servs. Corp. v. Boynes-Jackson, Tr. of Boynes,* No. CV 2016-0054, 2020 WL 7753689, at *6 (D.V.I. Dec. 28, 2020) (citing *Morcher v. Nash*, 32 F. Supp. 2d 239, 263 (D.V.I. 1998) (explaining that "computerized legal research differs from traditional research only in the mode of retrieval, and attorneys routinely purchase research materials as part of overhead")) (citing cases); *Bank of Am., N.A. v. Taylor*, No. ST-11-CV-0000164, 2019 WL 11706150, at *3 (V.I. Super. Sept. 9, 2019) (rejecting legal research fees); *Thomas v. Virgin Islands Bd. of Land Use Appeals*, No. ST-09-CV-202, 2018 WL 3917920, at *11 (V.I. Super. Aug. 8, 2018) (citing *Mahabir v. Heirs of George*, 2014 WL 1392954, at *2 (V.I. Super. Apr. 4, 2014)) ("'Computer legal research charges and copying costs are general overhead expenses that are not compensable costs' under 541.").

Plaintiff is seeking reimbursement in the amount of $1,074.23 for the following expenses: $83.50 for copying; $8.32 for postage; $1.61 for a telephone call; $75.00 for filing fees; $200.00 for title search fees; $630.00 in process server fees; $52.00 in recording fees; $5.00 for a consent of agent fee; and $18.80 in online research fees. (Dkt. No. 42-13 at 7-10). The Court finds that the photocopying, postage, telephone expenses, and online research fees totaling $112.23 are not

compensable. While the remaining expenses in the amount of $962.00 are compensable under the terms of the Mortgage, Plaintiff failed to attach actual invoices from each of the service providers—as required by the Local Rules of this Court—to support the expenditures claimed. *See* Local Rule 54.1(c) ("Upon failure of the prevailing party to comply with this Rule, all costs not properly supported shall be waived."); *Zurich Am. Ins. Co. v. Tyree Holdings Corp.*, 87 F. Supp. 3d 703, 705 (D.N.J. 2014) (internal citation omitted) ("The party seeking recover[y] of costs must 'provide sufficient information' to demonstrate the compensable nature of the requested costs.").

Accordingly, the Court will deny with prejudice the photocopying, postage, telephone expenses, and online research fees in the amount of $112.23, and deny without prejudice Plaintiff's request for $962.00 for the remainder of the expenses sought.

## IV.    CONCLUSION

For the reasons discussed above, the Court will grant Plaintiff Newrez LLC d/b/a Shellpoint Mortgage Servicing's "Motion for Summary Judgment" (Dkt. No. 41) against Defendants Dean C. Plaskett and the Department of Justice of the United States. Accordingly, the Court will award Judgment in favor of Plaintiff and against Defendant Plaskett in the amount of $276,871.45 consisting of the principal balance of $131,896.64; accrued interest from July 1, 2012 to December 15, 2021 of $77,942.67; accrued interest from December 16, 2021 through the date of the entry of Judgment of $14,773.86; escrow balance at loan transfer of $31,589.33; late charges of $1,960.33; insurance of $2,802.12; taxes of $337.04; and corporate advances of $15,569.46. The total indebtedness of $276,871.45 shall accrue interest at the federal statutory rate until the Judgment is satisfied. 28 U.S.C. § 1961(a).

In addition, the Court will award Plaintiff $5,176.00 in attorneys' fees to be assessed against Defendant Plaskett. The Court will deny with prejudice the photocopying, postage,

telephone expenses, and online research fees in the amount of $112.23, and deny without prejudice Plaintiff's request in the amount of $962.00 for the remainder of the expenses sought.

The Court will also grant summary judgment in favor of Plaintiff and against the DOJ, finding that Plaintiff's Mortgage on the Property is a first priority lien and the DOJ's lien is a second priority lien.

The Court will also deny Plaintiff's "Motion to Strike Sur-Reply" (Dkt. No. 47); grant Plaskett's "Motion to Supplement" (Dkt. No. 69); and deny as moot Plaintiff's "Motion for a Status Conference" (Dkt. No. 71).

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date:  September 30, 2023                    _____/s/_____
                                            WILMA A. LEWIS
                                            District Judge